THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARY DOE, on behalf of JANE DOE, a minor** | **CIVIL ACTION** |
| v. | No. 24-4368 |
| **HEMPFIELD SCHOOL DISTRICT** | |

**Henry, J.**                                                                                                      **September 29, 2025**

**MEMORANDUM**

A mother brings this case on behalf of her child, alleging that the girl was raped at a "makeout spot" by a classmate inside her high school's cafeteria during school hours. The plaintiff argues that the school district is liable for having done nothing to stop the rape from occurring despite its having been aware of a previous instance of sexual violence by the same classmate against the same girl. The district moved to dismiss the complaint and to strike a prayer for emotional and psychological damages.

**I. BACKGROUND**[1]

Jane Doe was, at the time of the alleged incidents in 2022, a ninth-grade student at Hempfield High School in Hempfield School District ("the District") in Landisville, Pennsylvania. She and her mother Mary Doe are pseudonymous residents of Lancaster County.

Around March 25, 2022, Jane met up with another student at East Petersburg Park after school. The other student sexually assaulted Jane by groping her breasts without her consent and giving her a "hickey." Days afterward, Mary contacted the District to report the event. She spoke

---

[1] *See infra* § II. When I refer to the complaint (or "compl."), I mean the operative complaint as amended, filed at ECF 10.

1

with School Resource Officer Tim Mark from the East Hempfield Police Department and "directed [him] that there was to be no contact" between Jane and the assailant. She told personnel at the school and the District about the incident and directed that there should be no contact between Jane and the assailant. Mary told a school receptionist, Grade Principal Mark Conrad, guidance counselors, other administrators, school police and security personnel to not permit Jane and the assailant to be near each other and to "limit[] and/or monitor[]" any communication between them at all times. Compl. ¶ 38.

In response, the School District allegedly did nothing. It did not limit the assailant's contact with Jane. It did not expel the assailant, who had approximately five prior disciplinary violations at school, including for fighting and physical assault.

About two months later, on May 24, 2022,[2] Jane and the assailant met in the school cafeteria in an area behind the vending machines, a location known to the school and school district as a popular "makeout spot." Although District employees were broadly aware of the makeout spot, they took no action to stop students from meeting up there for sexual acts, turning a blind eye. Although Jane met her assailant at the makeout spot, she did not consent to his sexual advances. The assailant ignored Jane's telling him to stop. Unable to fight the assailant off, Jane went into a state of shock as he raped her. Meanwhile, elsewhere in the cafeteria were teachers and other District employees, who at no time intervened or came to Jane's aid.

Afterward, Jane met with Logan Albaugh, a school guidance counselor, who accused Jane of lying about the incident.[3] The day after the rape, Jane went to urgent care and underwent a rape

---

[2] The District's memorandum refers to May 24 as the second-to-last day of school. Def's Mem. of L. ("Mem.") 1, ECF 12-1 at 6.

[3] It is unclear when Jane met with Albaugh based on the allegation, which begins, "Following the rape on May 24, 2022, Jane Doe met with Logan Albaugh . . ." Compl. ¶ 58. The text is

kit collection. The next day, Mary and Jane Doe contacted the District to report the rape, speaking with the receptionist, school principal William Brossman, and School Resource Officer Mark.

Over the summer, Mary contacted the principal of Landisville, apparently another school in the District, and arranged Jane's transfer to virtual school for the coming grade to come. Mary stated that Jane would not attend Hempfield High while the assailant remained enrolled. The decision to have Jane attend only virtual school was due to continued "shame, anxiety, embarrassment, depression, and guilt about the rape and the School District and Hempfield's failure to protect her prior to and after the rape." *Id.* ¶ 64. But virtual school was insufficient, depriving Jane of educational and social benefits of in-person schooling as well as "her education pursuant to her Individualized Education Program," which involved some kind of "specially designed instruction." *Id*. ¶¶ 69, 73. In November, Mary reached out to school employees to inquire about Jane's returning to school "only if assurances were made" that the assailant was no longer enrolled. These emails were ignored. In the following semester, after learning that the assailant had left Hempfield, Jane reenrolled.

This case is not directly between Jane (or Mary) and the student assailant. Instead, Mary alleges failings by the District regarding its responsibility for Jane as a student: Despite its knowledge of the assault at the park, the District did nothing to help avoid another assault—even when Mary explicitly asked for it to keep the students separate. It did not get a Title IX coordinator or a counselor involved. It did not inform the family of Jane's rights or take any remedial action, including offering academic services or counseling or anything to keep Jane away from the assailant. Mary alleges that the school either failed to have or had insufficient policies, procedures or

---

ambiguous about whether this meeting happened on that same date or not. It comes after allegations regarding May 25 and May 26.

3

systems to control and supervise students, and that it failed to provide relevant and necessary training.

During the pendency of the present motion, Mary moved for leave to file supplemental briefing regarding *L.F.V. v. South Philadelphia High School*, 340 A.3d 395 (Pa. Commw. 2025), which was decided June 9, 2025 and arguably impacts the immunity analysis. I granted Mary that leave and leave for the District to file a brief responsive to that briefing, although the District made no filing.

## II. LEGAL FRAMEWORK

To survive a motion to dismiss under Rule 12(b)(6), the complaint must set forth facts that raise a plausible inference that the defendant inflicted a legally cognizable harm upon the plaintiff. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quotation marks and citations omitted). The rule "does not permit dismissal of a well-pleaded complaint simply because it strikes a savvy judge that actual proof of those facts is improbable." *Id.* (quotation marks omitted).

As for considering a motion to strike under Rule 12(f), the standard and analysis are presented together below in § III.B.

## III. DISCUSSION

The District moves to dismiss all three of Mary's counts against it and to strike the prayer for some damages in the first count. I proceed approximately along the organization offered by the

District's brief, except that I consider the motion to strike immediately after the underlying Title IX claims.

### A. Title IX and Deliberate Indifference (Count I)

Mary Doe's first claim comes under Title IX, which mandates that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Mary's claim principally regards the school's *pre-assault* liability regarding its failure to anticipate and prevent the cafeteria rape. Mary also includes in her complaint allegations of a *post-assault* liability regarding the school's response after the rape was reported based on its inaction unreasonably causing Jane to take matters into her own hands, distancing herself from her assailant by cloistering at home.

The parties offer different recitations of the requirements to prevail on such claims. According to the District, such a suit for student-on-student sexual harassment must show that

> (1) the School District received federal funds; (2) sexual harassment occurred; (3) the harassment occurred under circumstances wherein the School District exercised substantial control over both the harasser and the context in which the harassment occurred; (4) the School District had actual knowledge of the harassment; (5) the School District was deliberately indifferent to the harassment; and (6) the harassment was so severe, pervasive, and objectively offensive that it could be said to have deprived the victims of access to the educational opportunities or benefits provided by the school.

Def's Mem. of L. ("Mem.") 11 (quoting *Brooks v. City of Philadelphia*, 747 F.Supp.2d 477, 481 (E.D. Pa. 2010) (cleaned up and omitting citations)).[4] For the pre-assault claim only, Mary offers a citation to *Does v. Se. Delco Sch. Dist.*, which read circuit precedent to require only "that (1) an

---

[4] Where supplied, I use the filing's pagination rather than the header appended by the Clerk.

appropriate person at the school (2) had actual knowledge of facts indicating a substantial danger to students and (3) acted with deliberate indifference to that danger." 272 F. Supp. 3d 656, 688 (E.D. Pa. 2017) (citing *Bostic v. Smyrna Sch. Dist.*, 418 F.3d 355, 361 (3d Cir. 2005)). *Does* and *Bostic* both dealt with allegations of harassment by teachers, rather than other students. *Does*, 272 F. Supp. 3d at 663; *Bostic*, 418 F.3d at 357. Given that the complaint clearly pleads *Brooks*'s first and second element, and the District concedes them, the functional distinction between these two recitations as to pre-assault conduct is the sixth *Brooks* element of harassment that is "severe, pervasive, and objectively offensive." The District seems to concede this element "with respect to the March 2022 harassment," Mem. 11 ("Plaintiff has failed to satisfy the third, fourth, and fifth elements"), but it nevertheless argues that because the incident was a single event (at the time) and followed by Jane's return to school without incident (for a couple of months), it was not "severe" or "pervasive" under the sixth element. *Id.* at 12. It additionally argues that it cannot be liable for the assault in the park, because that assault occurred outside school hours and off campus.

  The District is right that it is not liable for the conduct of the assailant in the park, but the park assault is not itself part of Mary's claim. The pre-assault claim ("pre-assault" refers to conduct before the cafeteria rape, not the park assault) only considers the park assault as the subject matter that the District had actual notice about, which therefore made the District liable when it failed to do anything to prevent the later rape. The District's motion therefore misapprehends the nature of Mary's complaint, which does not concern either of the assaults *themselves* but the District's alleged failure to prevent the cafeteria rape (again, pre-assault, *i.e.*, pre-rape) and thereafter its response (post-assault, *i.e.*, post-rape). The motion essentially makes no argument as to the actual

substance of the pre-assault claim, which is itself sufficient grounds to deny dismissal as to that theory. *See* L. Civ. R. 7.1(c); *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).[5]

As to post-assault liability, the District argues that the complaint does not adequately plead that the District had "actual knowledge of the alleged harassment," that it was deliberately indifferent in its reaction, or that the harassment was severe, pervasive, and objectively offensive. Mem. 12–13.[6] It argues that the assault itself occurred without its prior knowledge and that it first learned of the incident two days afterward, by which time summer break had begun. Since Jane thereafter attended cyber school at her own request, the District argues, until shortly after she requested to reenroll in person, there was essentially no risk to Jane.

As to the post-assault, Mary argues that she must show that

> 1) [Jane] was sexually harassed in a District program or activity;
> 2) the District had actual notice of the harassment;
> 3) the District was deliberately indifferent to what was reported, and
> 4) the harassment was so severe, pervasive, and objectively offensive that it deprived [Jane] of access to educational opportunities or benefits.

Pl's Brief in Opposition ("BIO") 13–14. For this, Mary cites a six-page span of *Davis*, but in arguing each element, she also cites additional law.

In similar form with the pre-assault theory, the District's argument as to post-assault seems to misapprehend the nature of Mary's claim. Mary does not charge the District with having learned of the cafeteria rape too slowly, or with having done too little before the summer break. She claims

---

[5] The closest the District comes to making a direct argument on the pre-assault claim is its argument that the harassment was "[r]egrettable as Student may have found it, . . . neither severe nor persuasive [*sic*]." Mem. 12. If this can be said to imply an argument that a single incident of sexual assault on a young person is insufficient to demonstrate severe, pervasive, and objectively offensive harassment, the District offers no authority on that point.

[6] For post-assault liability, the District does not even imply an argument as to the severity, pervasiveness, or offensiveness of the harassment, merely asserting that that element is lacking.

7

that the District deprived her of educational activities and a safe environment the *next* semester by failing to do anything for her, despite its awareness of her cafeteria rape allegation, until the assailant left the school apparently on his own. Compl. ¶ 110. The District's only availing argument is that it did nothing because, while Jane was sequestering herself at home, "[t]here was quite literally no risk that [she and the assailant] would come into contact with one another or that other remedial measures need be taken." Mem. 13. Inasmuch as it claims that its educational responsibilities cease where a claimant has sought refuge outside the school walls, the District again offers no authority.

### B. Striking Emotional and Psychological Damages under Title IX

The District's motion is styled "Motion to Dismiss Pursuant to Rule 12(b)(6) and to Strike Pursuant to Rule 12(f)." ECF 12 at 1 (restyled from all capitals.) Although the rest of the motion comes under R. 12(b)(6), the District instead moves under R. 12(f) regarding emotional and psychological damages, arguing that they are forbidden and therefore should be stricken.

Rule 12(f) provides that that the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter[,]" either on its own or in response to a motion raised by a party." Fed. R. Civ. P. 12(f). As the District lays out in its own section on standards of review,

> [T]he standard for striking under Rule 12(f) is strict and that only allegations that are so unrelated to plaintiffs' claims as to be unworthy of any consideration should be stricken." *Becker v. Chicago Title Ins. Co.*, No. 3:21-CV-00286, 2004 WL 228672 (E.D. Pa. Feb. 4, 2004) (internal quotations and punctuation omitted). "Content is immaterial when it has no essential or important relationship to the claim for relief." *Abrams v. eResearch Technology, Inc.*, 703 F.Supp.3d 593, 600 (E.D. Pa. 2023).

8

Memo. 9–10.[7] It then argues that Supreme Court precedent in *Cummings v. Premier Rehab Keller, PLLC*, 596 U.S. 212, 230 (2012) forecloses recovery for emotional and psychological damages, as has been the conclusion of least one ruling in this district.

Supposing that the District is entirely right about the law, would that make the prayers for relief by Mary "redundant, immaterial, impertinent, or scandalous"? Are Mary's prayers for that relief "so unrelated" to her claims as to be "unworthy of any consideration"? I do not understand how the District's motion can meet the standards it offers. I will therefore deny the motion to strike.

### C.   "Civil Rights Violations" under Section 1983 (Count 2)

The District next moves to dismiss the claims made under 42 U.S.C. § 1983, a statute that creates a cause of action where a state actor deprives a plaintiff of her federal rights. The District begins by laying out the standards for stating a § 1983 claim for violation of the Equal Protection Clause. Without discussing the application of those standards to the present case, it then pivots to the standards for stating a claim for a violation under the Due Process Clause.

State actors like the District are not typically liable under the Due Process Clause for injuries caused by private actors. *Deshaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 198–200 (1989). Two doctrines provide exceptions to that rule: The "special relationship" of some plaintiffs to the state, and a "state-created danger." As the District points out, neither applies to Mary's claims, and Mary does not argue in response that they do. Instead, Mary focuses on providing authorities that seem to permit claims against state actors whose municipal policies or customs cause constitutional violations under *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691

---

[7] In the same paragraph, the District then includes a sentence of argument: "Here, Plaintiff has requested damages that are unavailable under Supreme Court precedent and any such demand should be stricken from the Second Amended Complaint." Memo. 10.

(1978). However, Mary has not demonstrated a constitutional violation under the Due Process Clause, so there is no *Monell* claim deriving from such a violation.

A plaintiff may make an Equal Protection Clause claim via § 1983 against a district where it "show[s] that the harassment was the result of municipal custom, policy, or practice." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257–58 (2009). Mary adequately alleges that the District's customs, policies, or practices evinced deliberate indifference causing harm to Jane, and therefore her *Monell* claim proceeds on this theory.

### D. District Immunity (Count 3)

Finally, the District argues that it is immune from suit on the state law negligence claim based on the Political Subdivision Tort Claims Act (PSTCA). That statute generally asserts sovereign immunity for local agencies from suit for "damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. C.S. § 8541. Nevertheless, it contains an exception for negligence suits in relation to certain enumerated categories of claims. *Id.* § 8542. In particular, under § 8542(b)(9), "acts by a local agency or any of its employees may result in the imposition of liability" including "*Sexual abuse.*--Conduct which constitutes an offense enumerated under section 5551(7) [a listing of sexual offenses, including rape] if the injuries to the plaintiff were caused by actions or omissions of the local agency which constitute negligence."

The District argues that the waiver for sexual abuse liability does not apply to cases in which the alleged assault is between peers like students. It notes the lack of Third Circuit or Pennsylvania Supreme Court law on point and offers a ruling from a Middle District of Pennsylvania court in *Doe v. Williamsport Area Sch. Dist.*, 699 F. Supp.3d 306, 328–29 (M.D. Pa. 2023). The District characterizes this opinion as holding that the exception applies "only where the negligence

10

of the municipal body causes sexual abuse," paraphrasing the decision's requirement that the "sexual abuse must result from the municipality's acts or omissions." *Id.* at 328 (internal quotation marks omitted). In *Williamsport Area Sch. Dist.*, a high school boy was sexually assaulted in his sleep and then taunted with racial slurs during a school-sponsored baseball trip while chaperones were absent. *Id.* at 314. Although that court dismissed several counts of negligence under immunity, it did not dismiss those counts that related directly to the omissions that led to the assault itself, such as the chaperones' absence and the failure to train or supervise the chaperones not to absent themselves. *Id.* at 332–33.[8]

Further, the recent decision in *L.F.V. v. South Philadelphia High School*, 340 A.3d 395 (Pa. Commw. 2025) considered a very similar scenario to the present facts in which two students sexually assaulted a third in a school gymnasium. The Commonwealth Court held squarely that the immunity exception may apply to scenarios where a third party (such as a peer student) is the tortfeasor, reasoning in part from analogous precedent that "the District may be negligent for misconduct that enabled the sexual abuse, but not the abuse itself." *Id.* at 409. Notably, as previously mentioned, the District here did not attempt to address or distinguish this supplemental authority.

Regardless, *L.F.V.* does not overcome the requirement that the school's actions or omissions connect causally to the sexual abuse in question, and causality at least requires that the actions or omissions precede the injury. For that reason, the District is immune to allegations of negligence that occurred after the rape. I dismiss negligence only as to the theories in ¶¶ 156.v ("Failing to review and monitor Hempfield's security footage") as it pertains to review after the rape took place

---

[8] The District's motion did not make any argument as to the substance of the negligence claims. Although Mary briefly discusses duty, breach, proximate cause, and prudential issues, these issues were not put before me.

and 156.aa ("Failing to respond appropriately to Jane Doe's report of the rape and sexual assaults") as it pertains to the response to the rape.

## IV. <u>CONCLUSION</u>

For the reasons given in this memorandum, I will issue an order granting in part and denying in part the motions to dismiss and denying the motion to strike.